

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

KTF:VC
F. #2023R00389

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

December 18, 2024

By E-mail and ECF

The Honorable Sanket J. Bulsara
United States Magistrate Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

   Re: United States v. Shaidhual Chowdhury et al.
     Case No. 23-CR-278 (NRM)

Dear Judge Bulsara:

  Shaidhual Chowdhury (the "defendant") was arrested this morning and is scheduled to make his initial appearance before Your Honor later today in the above-captioned matter. The government respectfully submits this letter in support of its application for the entry today of an order of detention pending trial for the defendant. As detailed below, the defendant committed a brutal kidnapping in which the victim was interrogated, threatened with death repeatedly, tied up, gagged, beaten, struck with a baseball bat and metal rod, and sliced with a knife. After the kidnapping, the defendant attempted to intimidate the victim from reporting the crimes committed against him. The evidence for these crimes is enormous, including an hours-long audio recording and cell-site data, and for these crimes, the defendant faces a decades-long Guidelines sentence. Accordingly, the defendant is both a danger and a flight risk, and no set of conditions can reasonably ensure the safety of the community or his future appearance in Court.

  I. The Defendant Commits a Brutal Kidnapping in Queens, New York

  The defendant is the only newly charged defendant in the second superseding indictment. That indictment charges eight defendants with three kidnappings in less than two months, all orchestrated by the defendant's co-conspirator Abu Chowdhury. The defendant is charged with the May 2023 kidnapping and conspiracy to kidnap an individual named in the indictment as John Doe-3. As described further below, the defendant interrogated and threatened John Doe-3; he cheered on his co-conspirators as they gagged and beat John Doe-3 with fists and a metal rod; and he himself assaulted John Doe-3 with his fists, a baseball bat and a knife.

A. <u>The Defendant's Co-Conspirators Abduct John Doe-3</u>

John Doe-3 is a Bangladeshi citizen who arrived in the United States in April 2023. When he came to the United States, knowing almost no one, he entrusted himself to the defendant's co-conspirator Iffat Lubna, a college acquaintance from Bangladesh. He also befriended her boyfriend, the defendant's co-conspirator Abu Chowdhury. When John Doe-3 was suddenly left without a roommate, he turned to Lubna. She took him into her apartment and insisted on holding all of his remaining money, his passport, his immigration paperwork and his diploma from Bangladesh, purportedly for safekeeping.

Abu Chowdhury and Lubna quickly turned on John Doe-3 on the morning of May 10, 2023. The two locked him in Abu Chowdhury's SUV and accused him of spreading rumors about Lubna's reputation. Lubna and Abu Chowdhury punched and kicked him inside the SUV. Abu Chowdhury menaced John Doe-3 with a screwdriver, threatening to poke out his eyes or thrust it into his ear if John Doe-3 attempted to flee. Abu Chowdhury and Lubna interrogated and threatened not only John Doe-3, but also a friend of John Doe-3's in Bangladesh.[1]

The two continued to beat John Doe-3 and demanded that he return to Bangladesh because he purportedly did not deserve to live in the United States. When he informed them that he could not afford to buy a plane ticket, they forced him to call his father in Bangladesh to ask for money to buy him a plane ticket. (Although John Doe-3's father too did not have the money, a plane ticket to Bangladesh was purchased for John Doe-3, though he never boarded the flight.),

Later that same day, May 10, Abu Chowdhury and Lubna took John Doe-3 to Lubna's apartment. Abu Chowdhury accused John Doe-3 of attempting to call someone and attacked him. He hit John Doe-3's head against the ground and struck his back with a beer bottle. He once again threatened him with a screwdriver.

B. <u>Shaidhual Chowdhury Assaults John Doe-3 with a Metal Rod, Baseball Bat and Knife</u>

After the assault in Lubna's apartment, Abu Chowdhury forced John Doe-3 back into his SUV. Lubna joined. The three drove to a location in Hillside, Queens. John Doe-3 overheard Abu Chowdhury call a man named "Shah," asking him to bring salt, chili powder, rod and knife. (John Doe-3 identified "Shah" in a double-blind photo array to be the defendant Shaidhual Chowdhury.) The defendant met Lubna and Abu Chowdhury to perpetrate the next and most extreme phase of the kidnapping.

The defendant, Abu Chowdhury and Lubna bound John Doe-3's hands. They threatened him over and over with weapons, sodomy, crippling and death. They gagged him to

---

[1] Videos recorded on Abu Chowdhury's own phone document these threats, and a corresponding screen recording taken by John Doe-3's friend shows John Doe-3 in the back seat of an SUV and Lubna and Abu Chowdhury in the vehicle's front seats. Furthermore, in one of the videos from Abu Chowdhury's phone, Abu Chowdhury can be seen clutching a screwdriver in his hand.

2

stifle his screams. They cut slices into the inside of his palms and threatened to pour salt and chili powder into the wounds. They beat him with a metal rod and a baseball bat.

A nearly three-hour audio recording from that night – recorded on Abu Chowdhury's own phone – documents the assault. Statements from Abu Chowdhury, Lubna and the defendant show how each participated. In particular, the audio recording depicts the defendant as an eager participant:

- While John Doe-3 begged, "Brother, leave me, let me be," the defendant cheered (in English), "Cut that n***a's toes off," and warned John Doe-3, "Talk, talk now, or I will stab you."[2] (During the assault Abu Chowdhury asked (in English) the defendant whether he has "a knife in the car.")

- The defendant can be heard striking Doe-3 while Abu Chowdhury chanted (in English), "Rock him, rock him… keep on rocking, keep on rocking that n***a," and John Doe-3 pleaded, "Brother Shah, Brother Shah."

- The defendant said (in English): "Open that, cuz. Stuff this shit in his mouth," and "Open! Open!" as Lubna apparently gagged John Doe-3.

- The defendant discussed rummaging through John Doe-3's phone with Abu Chowdhury.

The same recording also substantiates the ferocious interrogation and assault of John Doe-3 by his co-conspirators alongside the defendant. For example, the recording reveals the following statements:

- Abu Chowdhury: "Don't shout, don't shout. If you shout, then I will cut you here. Didn't I tell you? I will make you agonize then send you home. Didn't I tell you? Yeah? Don't make a sound, if you do, I will kill you."

- Abu Chowdhury: "I'm going to make you crippled. I'll break your legs. I'll smash your bones."

- Abu Chowdhury (in English): "Yo, cuz, give me a rod. I want to put that shit in his ass."

- Abu Chowdhury: "You pig, you will die today."

- Abu Chowdhury (in English): "I'm gonna kill this n***a, get out of here, cuz. [U/I]. Get the squad ready, we gotta pick up [U/I] of niggas. Motherfucking

---

[2] These quotes have been translated into English except where otherwise noted.

3

> Bangali [U/I], we just gonna pick them and torture them until this motherfucker answers."

- Lubna: "No, get out of the way, I will kill him. . . . But I want to kill him myself."

- Lubna: "No, I will see this to the end. You will die in front of me, and only then will I find peace."

- Lubna: "And if it affects my family, then I will kill you, [John Doe-3], remember that.

- Lubna: "You will die, you will die in front of me, I will kill you, you can't make a sound."

- Lubna: "Tie his mouth up, tie it up. Bro, give me this. Let me tie his mouth up," and "Tie his hands up."

Throughout the recording, John Doe-3 can be heard groaning in pain and pleading for mercy. His statements also reveal the abuse and indeed torture he is suffering:

- "Bro, bro, don't beat me. Am I not obeying all of your orders? Oh God, God."

- "God, God! Oh God, I can't take more, I can't take it."

- To someone on the phone: "Bro, no, no, if I stop talking, then they'll hit me with a rod."

- "Brother, please don't hit me."

C. <u>The Defendant Attempts to Intimidate John Doe-3 into Silence</u>

After this attack, the defendant's co-conspirators drugged John Doe-3 and continued to hold him in captivity through May 13. Even after May 13, John Doe-3 – with neither friends nor family nor control over his own possessions – was forced to stay with Abu Chowdhury and Lubna for weeks. He never received medical treatment for his injuries. His passport and other important papers were not returned to him until January 2024.

Abu Chowdhury warned John Doe-3 that if he told anyone what happened, they would kill him and burn his body. The defendant echoed that message in June 2023 when he unexpectedly showed up at John Doe-3's place of employment to intimidate him.

4

II.     Legal Standard

Under the Bail Reform Act, Title 18, United States Code, Section 3141 et seq., federal courts are empowered to order a defendant's detention pending trial upon a determination that "no condition or combination of conditions would reasonably assure the appearance of the person as required and the safety of any other person and the community[.]" 18 U.S.C. § 3142(e). A finding of dangerousness must be supported by clear and convincing evidence. See United States v. Ferranti, 66 F.3d 540, 542 (2d Cir. 1995). A finding of risk of flight must be supported by a preponderance of the evidence. See United States v. Jackson, 823 F.2d 4, 5 (2d Cir. 1987).

Whether detention is sought on the basis of flight or dangerousness, the Bail Reform Act lists four factors to be considered in the detention analysis: (1) the nature and circumstances of the crimes charged, (2) the history and characteristics of the defendant, (3) the seriousness of the danger posed by the defendant's release and (4) the weight of the evidence against the defendant. See 18 U.S.C. § 3142(g); see also United States v. Jacobson, 502 F. App'x 31, 32 (2d Cir. 2012).

The concept of "dangerousness" encompasses not only the effect of a defendant's release on the safety of identifiable individuals, such as victims and witnesses, but also "the danger that the defendant might engage in criminal activity to the detriment of the community." United States v. Millan, 4 F.3d 1038, 1048 (2d Cir. 1993) (quoting legislative history).

Where the evidence of guilt is strong, it provides "a considerable incentive to flee." Millan, 4 F.3d at 1046; see also United States v. Palmer-Contreras, 835 F.2d 15, 18 (1st Cir. 1987) (per curiam) (where "the evidence against defendants is strong, the incentive for relocation is increased"). Additionally, the possibility of a severe sentence is an important factor in assessing a defendant's likelihood of flight. See Jackson, 823 F.2d at 7; United States v. Martir, 782 F.2d 1141, 1147 (2d Cir. 1986) (defendants charged with serious offenses whose maximum combined terms created potent incentives to flee).

Under the Bail Reform Act, the government may proceed by proffer. See Ferranti, 66 F.3d at 541; see also United States v. LaFontaine, 210 F.3d 125, 130-31 (2d Cir. 2000) (explaining that the government is entitled to proceed by proffer in a detention hearing).

III.     The Defendant Should Be Detained Pending Trial

For the reasons described above and below, the government has met its burden of establishing the defendant's dangerousness and risk of flight sufficient to require their detention pending trial.[3]

---

[3] The government has not yet received the Pretrial Services report for this defendant. As a matter of course, the government notes its understanding that in making its recommendation about whether to detain a defendant pretrial, Pretrial Services does not consider the following relevant factors: whether there is a presumption of detention based on the offenses

The nature and circumstances of the offense, and the danger to the community if the defendant is released, both show that the defendant must be detained. The danger here is two-fold. First, as a general matter, an individual who commits this sort of a crime is inherently a danger to the community. The defendant mercilessly tortured the defendant and allowed – indeed encouraged – Abu Chowdhury and Lubna to torture him as well. Second, there exists a real concern about danger to the victim in this case. The defendant and Abu Chowdhury have already attempted to intimidate this witness from speaking with the government.

The defendant also poses a significant risk of flight if released without a robust package. If convicted of the charged kidnapping, the defendant may face a Guidelines sentencing range of 235 to 293 months' imprisonment. "When faced with the possibility of a significant prison term, defendants have a strong incentive to flee." United States v. Edwards, 2021 WL 796089, at *2 (E.D.N.Y. Mar. 2, 2021). The Second Circuit has held that the possibility of a severe sentence can establish flight risk. See, e.g., United States v. Scali, 738 F. App'x 32, 33 (2d Cir. 2018); United States v. Khusanov, 731 F. App'x 19, 21 (2d Cir. 2018) ("[A] district court does not clearly err in concluding that a defendant facing a potentially lengthy prison sentence possesses a strong motive to flee.").

The defendant also poses a risk of flight because the evidence against him is overwhelming. John Doe-3 identified the defendant in a double-blind photo array. A lengthy audio recording corroborates the victim's account and vividly depicts the defendant's commission of the charged offenses. Cell-site data places the defendant with Abu Chowdhury from approximately 9:20 p.m. through 11:15 p.m. on May 10, 2023.[4] This is consistent with call records which show that the defendant and Abu Chowdhury exchanged phone calls shortly before the defendant arrived at the location. Moreover, the government seized the defendant's phone earlier today pursuant to a search warrant and may discover even further evidence.

---

charged; foreign ties; personal wealth or access to assets; membership in, leadership in, or ties to a criminal organization; or alcohol abuse.

[4]    From May 10, 2023 through May 13, 2023, all available cell-site data shows John Doe-3's phone with Abu Chowdhury's phone.

IV.　Conclusion

　　　　For the reasons set forth above, the government requests that the defendant be detained pending trial.[5]

Respectfully submitted,

BREON PEACE
United States Attorney

By:　/s/ Vincent Chiappini
　　　Stephanie Pak
　　　Vincent Chiappini
　　　Assistant U.S. Attorney
　　　(718) 254-6064/6299

cc:　Clerk of Court (by e-mail)
　　　Sam Gregory, Esq. (by e-mail)

---

[5]　The government acknowledges that none of the co-defendants in this case are detained at this time, including some over the government's objection. All of them have substantial bond conditions. The government maintains that for the reasons stated herein, detention is appropriate.